# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DRENDOLYN SIMS,<br><br>　　　　　　　　　　Plaintiff,<br>vs.<br>CITY OF LA MESA,<br><br>　　　　　　　　　　Defendant. | CASE NO. 09cv1356 JM(WMc)<br><br>ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; DISMISSING STATE CLAIMS WITHOUT PREJUDICE |

The only remaining Defendant, Mike Stanton, moves for summary judgment on all claims asserted against him in Plaintiff Drendolyn Sims' First Amended Civil Rights Complaint ("FAC"). Plaintiff Drendolyn Sims opposes the motion. For the reasons set forth below, the court grants the motion for summary judgment in favor of Defendant and against Plaintiff on all claims and dismisses the state law claims without prejudice for lack of supplemental jurisdiction. The Clerk of Court is instructed to close the file.

## BACKGROUND

On June 24, 2009, Plaintiff commenced this federal question action alleging that Defendant Officer John Doe and the City of La Mesa violated her federal civil rights when Officer Doe effectuated an unconstitutional arrest, an unconstitutional search, and used excessive force. Plaintiff also alleges state law claims for negligence, negligent infliction of emotional distress, and battery.

On August 28, 2009 the court granted Defendant City of La Mesa's motion to dismiss with leave to amend, finding that Plaintiff failed to state a Monell claim. (Ct. Dkt. No. 8). On September

1 | 17, 2009 Plaintiff filed the FAC, naming Defendant Officer Mike Stanton as the only defendant.

2 | The FAC

In broad brush, the FAC alleges that on the evening of May 26, 2008, Plaintiff was at her home when she heard commotion coming from the unit next door and she went outside to ask the individuals to quiet down. (FAC ¶¶5,6). She then returned to the gateway area at the front of her apartment. The front yard has a six foot tall wooden yard gate. She was speaking with her guest, Nicholas Patrick, outside the front gate when a City of La Mesa patrol vehicle drove into the area. Officer Massey drove the vehicle and Defendant Officer Stanton was a passenger in the vehicle. (Id. ¶10). Plaintiff and Mr. Patrick then entered the yard through the gate and closed it. Plaintiff was standing directly behind the gate. She alleges that "Defendant observed the Plaintiff walk through the front-yard gate onto the premises of Unit #A-4." (Id. ¶15). Within "moments" of entering through the front gate, and without any warning, Defendant Stanton allegedly kicked open the gate, seriously injuring Plaintiff. (Id ¶¶17, 22).

Based upon the above generally described conduct, Plaintiff alleges violations of 42 U.S.C. §1983 for unconstitutional search and excessive force. Notably, Plaintiff requests dismissal of the unconstitutional seizure claim for lack of evidence. (Oppo. at p.1 n.1). Defendant moves for summary judgment on all remaining claims.

**DISCUSSION**

**Legal Standards**

A motion for summary judgment shall be granted where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Prison Legal News v. Lehman, 397 F.3d 692, 698 (9th Cir. 2005). The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the file which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). There is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials <u>negating</u> the opponent's claim." Id. (emphasis in original). The opposing party cannot rest on the mere allegations or denials of a pleading, but must "go beyond the pleadings and by [the party's] own affidavits, or by the

1  'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that
2  there is a genuine issue for trial.'" Id. at 324 (citation omitted).  The opposing party also may not rely
3  solely on conclusory allegations unsupported by factual data. Taylor v. List, 880 F.2d 1040, 1045 (9th
4  Cir. 1989).

5  The court must examine the evidence in the light most favorable to the non-moving party.
6  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).  Any doubt as to the existence of any issue
7  of material fact requires denial of the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255
8  (1986).  On a motion for summary judgment, when "'the moving party bears the burden of proof at
9  trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence
10 were uncontroverted at trial.'"  Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992) (emphasis
11 in original) (quoting  International Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1264-65 (5th Cir.
12 1991), cert. denied, 502 U.S. 1059 (1992)).

13 **Qualified Immunity**

14 The defense of qualified immunity protects "government officials . . . from liability for civil
15 damages insofar as their conduct does not violate clearly established statutory or constitutional rights
16 of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).
17 The rule of qualified immunity protects " 'all but the plainly incompetent  or those who knowingly
18 violate the law.' " Saucier v. Katz, 533 U.S. 194, 202,(2001) (quoting Malley v. Briggs, 475 U.S. 335,
19 341 (1986)). A defendant may have a reasonable, but mistaken, belief about the facts or about what
20 the law requires in any given situation. Id. "Therefore, regardless of whether the constitutional
21 violation occurred, the [official] should prevail if the right asserted by the plaintiff was not 'clearly
22 established' or the [official] could have reasonably believed that his particular conduct was lawful."
23 Romero v. Kitsap County, 931 F.2d 624, 627 (9th Cir.1991).

24 The defense of qualified immunity balances "the need to hold public officials accountable
25 when they exercise power irresponsibly and the need to shield officials from harassment, distraction,
26 and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223,  129 S.Ct.
27 808, 815, 172 L.Ed.2d 565 (2009). Determining whether an official is entitled to qualified immunity
28 requires a two-part analysis. Saucier, 533 U.S. at 201; Ramirez v. City of Buena Park, 560 F.3d 1012,

1020 (9th Cir.2009). First, a court must decide whether the factual record, viewing the record in the light most favorable to Plaintiff, establishes that Defendant Stanton violated a constitutional right. Id. Second, the court must decide whether the statutory or constitutional right at issue was "clearly established." Id. A right is "clearly established" for the purpose of qualified immunity if " 'it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted' ... or whether the state of the law [at the time of the alleged violation] gave 'fair warning' to [him] that [his] conduct was unconstitutional." Clement v. Gomez, 298 F.3d 898, 906 (9th Cir.2002) (quoting Saucier, 533 U.S. at 202). Because qualified immunity is an affirmative defense, the initial burden of proof lies with the official asserting the defense. Harlow, 457 U.S. at 812; Houghton v. South, 965 F.2d 1532, 1536 (9th Cir.1992). Finally, while often beneficial to approach the two-part inquiry in the sequence prescribed above, it is not mandatory. Pearson, 129 S.Ct. at 818. A court has "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." Id.; Ramirez, 560 F.3d at 1020. A court may grant defendants qualified immunity and dismiss plaintiff's claim if at any point the court answers either prong in the negative. See e.g., Tibbetts, 567 F.3d at 536-39 (bypassing the first prong and granting the defendants qualified immunity because the plaintiff's due process claim was not a "clearly established right" at the time of the alleged violation).

The Constitutional Violations

Plaintiff alleges that Defendant Stanton (1) applied excessive force in violation of the Fourth Amendment and (2) violated the Fourth Amendment when he opened the gate to the yard in front of Unit A4. Each is discussed in turn, followed by a discussion of Ms. Sims' evidentiary submissions.

**The Excessive Force Claim**

The parties agree that the Fourth Amendment standards apply to Plaintiff's claims of excessive force. (Oppo. at p.1 n.1; Reply at p.1). The Fourth Amendment requires peace officers to use only an amount of force that is objectively reasonable in light of all the surrounding circumstances. Graham v. Connor, 490 U.S. 386, 397 (1989); Headwaters Forest Defense v. County of Humboldt, 240 F.3d 1185, 1198 (9th Cir. 2001). "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or

1  motivation." Graham, 490 U.S. at 397. Assessing the level of permissible force "requires a careful
2  balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests
3  and the countervailing governmental interests at stake." Id. (internal quotation marks and citations
4  omitted); see also Mendoza v. Block, 27 F.3d 1357, 1362 (9th Cir.1994). Courts must give due regard
5  to the fact that officers frequently make split-second judgments about the amount of force to use
6  without the benefit of hindsight. Graham, 490 U.S. at 396-97. Further, the officer's right to make an
7  arrest necessarily includes the right to use some degree of force. Graham, 490 U.S. at 396;
8  Cunningham v. Gates, 229 F.3d 1271, 1290 (9th Cir. 2000); see also Cal. Penal Code § 835a ("A
9  peace officer who attempts to make an arrest need not retreat or desist from his efforts by reason of
10  the resistance or threatened resistance of the person being arrested."). "The 'reasonableness' of a
11  particular use of force must be judged from the perspective of a reasonable officer on the scene, rather
12  than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396.

13  The court concludes that Defendant Stanton satisfies his summary judgment burden by coming
14  forward with the following evidence. Over the Memorial Day weekend on May 27, 2008 at 1:05 a.m.,
15  Officers Stanton and Massey responded to a call of individuals involved in an unknown disturbance
16  (fight) in progress involving individuals with a baseball bat. (Stanton Decl. ¶2; Massey Decl. ¶2).
17  The officers were aware, based upon prior contact, that the area was an area known for violence
18  associated with gangs, including the use of knives and firearms. (Stanton Decl. ¶5). The Officers
19  drove a marked police cruiser north on Thorne Drive, the street where the reported disturbance was
20  located. As the Officers approached the scene of the reported disturbance, the Officers observed three
21  individuals standing on the west side of the street, and to their north, the approximate location of the
22  reported disturbance. The Officers could not determine whether any of the three individuals were
23  armed with a weapon. Upon seeing the marked policed vehicle, two of the individuals separated from
24  the third and walked northbound/westward into a nearby apartment complex. (Stanton Decl. ¶2;
25  Massey Decl. ¶1).

26  The third individual, later identified as Nicholas Patrick, or "Bibs," crossed the street in front
27  of the patrol car. At that point, Patrick was about 25 yards ahead of the patrol vehicle. (Massey Decl.
28  ¶3). Officer Massey, the driver of the patrol vehicle, also observed an unknown black female standing

next to a gate that Patrick was approaching. Id. Patrick walked quickly as he approached the six foot high wooden fence and gate. Officer Stanton, wearing a full police uniform, exited the vehicle and shouted at Patrick to stop. Patrick ignored the command and continued walking towards the gate. Officer Stanton loudly announced "police" again and ordered Patrick to stop on several occasions. At a distance of about 25 feet, Patrick looked directly at Officer Stanton, ignored his repeated order to stop and quickly entered the front gate of Unit A4. As soon as Patrick entered the gate, it quickly closed. (Stanton Decl. 3). At this point, Officer Stanton was only a few seconds behind Patrick. Officer Stanton also believed that Patrick's action of ignoring the officer's command violated California Penal Code §148 (a misdemeanor crime for willfully, resisting, delaying or obstructing a police officer), a crime committed in public and in the officer's presence. (Stanton Decl. ¶3). Officer Stanton, fearing for his safety and based upon the totality of circumstances and in the immediate pursuit of a possibly armed criminal suspect, made a split-second decision to kick open the gate. Officer Stanton did not believe that anyone was standing behind the gate. When he kicked open the gate, he struck Ms. Sims, causing her serious injury.

On the evidentiary record submitted by the parties, the court concludes that no constitutional violation occurred for two reasons. First, there is no evidence to show that Defendant Stanton possessed the requisite mental state for a Fourth Amendment violation.

> [A] violation of the Fourth amendment requires an intentional acquisition of physical control. A seizure occurs even when an unintended person or thing is the object of the detention or taking, but the detention or taking itself must be willful. This is implicit in the word 'seizure,' which can hardly be applied to an unknowing act.

Bower v. County of Inyo, 489 U.S. 593, 596 (1989). While a government actor caused Ms. Sims' injuries, the object of Defendant Stanton's intentions was a closed wooden gate, and not the seizure of either Ms. Sims or Mr. Patrick. There is no evidence submitted by any party to show that Defendant Stanton intended to harm any person when he kicked open the gate.[1] Rather, Defendant Stanton, out of concern for personal safety and in pursuit of a fleeing potentially armed suspect and lawbreaker (the §148 violation), made a split-second decision to kick open the gate. The court

---

[1] Ms. Sims testified that she was unaware of the presence of any police officers near her apartment at the time of her injuries, (Sims Depo. p.123:10-16), and Defendant Stanton testified that he did not see nor believe anyone was behind the gate. (Stanton Decl. ¶4). There is simply no evidence that Defendant Stanton intentionally applied force to any individual.

1  concludes that Plaintiff was not seized within the meaning of the Fourth Amendment. As noted in
2  <u>Bower</u>, "the Fourth Amendment addresses 'misuse of power,' not the accidental effects of otherwise
3  lawful government conduct." <u>Id</u>; <u>Madeiros v. O'Connell</u>, 150 F.3d 164, 169 (2nd Cir. 1998) (no Fourth
4  Amendment violation occurred because the hostage was injured by a bullet intended for the hostage-
5  taker).  As the injuries to Ms. Sims were unintentional for purposes of the Fourth Amendment,
6  Defendant Stanton is entitled to summary judgment on the excessive force claim.

7  Second, as more fully discussed below, the evidentiary record establishes that the force applied
8  by Defendant Stanton to the gate was not excessive, unreasonable, nor unnecessary and therefore no
9  Fourth Amendment violation occurred.

10  In sum, the court grants summary judgment on the excessive force claim in favor of Defendant
11  Stanton and against Ms. Sims.

## The Unconstitutional Search Claim

13  Plaintiff argues that Defendant Stanton violated the Fourth Amendment when he proceeded
14  to open the gate to Unit A4 without a warrant. It is axiomatic that the "'physical entry of the home
15  is the chief evil against which the wording of the Fourth Amendment is directed.'" <u>Welsh v.</u>
16  <u>Wisconsin</u>, 466 U.S. 740, 748 (1984) (quoting <u>United States v. United States District Court</u>, 407 U.S.
17  297, 313 (1972)). "In terms that apply equally to seizures of property and to seizures of persons, the
18  Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances,
19  that threshold may not reasonably be crossed without a warrant." <u>Payton v. New York</u>, 445 U.S. 573,
20  589-590 (1980). Plaintiff argues that Defendant Stanton lacked reasonable suspicion or probable
21  cause to open the gate to Unit A4.

22  Considering the exigencies at the time of the entry into the property, the court concludes that
23  Defendant Stanton was lawfully permitted to pursue Mr. Patrick into the curtilage area of Unit A4 and
24  to apply a reasonable amount of force to the gate in conducting the pursuit. Justification for a
25  detention existed when Defendant Stanton - - knowing the history of the area, the nature of the call,
26  the potential for a violent disturbance - - approached the area and observed the three men at the
27  location of the reported disturbance quickly disperse upon observing the Officers arrive. Such
28  conduct gave rise to an articulable suspicion to conduct an investigatory stop in a public place under

Terry v. Ohio, 392 U.S. 1 (1968). After Mr. Patrick crossed the street in front of the Officers, Defendant Stanton exited the patrol unit, identified himself as a police officer, approached Mr. Patrick, and ordered him to stop. Mr. Patrick looked directly at Defendant Stanton, continued to walk quickly away from him, and ignored the Officer's command to stop. At this point, Defendant Stanton had, at the very least, grounds to detain Mr. Patrick for violation of Penal Code §148. Indeed, Mr. Patrick's disobedience of a lawful order to stop constituted a basis for arrest for violation of Penal Code §148, a misdemeanor. Mr. Patrick continued walking and entered and closed the gate to Unit A4. Defendant Stanton reached the gate a few seconds after Mr. Patrick. Defendant Stanton did not see anyone behind the gate nor believe anyone was behind the gate. (Stanton Decl. ¶4). Based upon these identified circumstances, and fearing for his and the public's safety and in the immediate pursuit of a possibly armed criminal suspect, Defendant Stanton made the split-second decision to kick open the gate to obtain a view on the other side of the fence and to detain Mr. Patrick. As a matter of law, the totality and exigency of the circumstances establish that opening the gate into the curtilage area of Unit A4 did not result in an unconstitutional search.

Furthermore, an individual may not "thwart an otherwise proper arrest" that was set in motion in a public place by entering a gate to the yard area of Unit A4. United States v. Santana, 427 U.S. 38 (1976). The warrantless intrusion into the curtilage area of Unit A4, as opposed to the home itself, is justified by (1) the lesser expectation of privacy in having the public enter the gate to approach the home (as opposed to the home itself)[2] and (2) objective facts and circumstances: knowledge of the area, the time of day, nature of the call, the reported existence of weapons (baseball bat), the conduct of Mr. Patrick in failure to comply with Defendant Stanton's lawful order to stop, and officer and public safety concerns. It is well-established by the Supreme Court that the "Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others." Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 298-99 (1967). The totality of the circumstances identified above justify Defendant Stanton's limited pursuit of Mr.

---

[2] The court notes that the expectations of privacy for entry onto one's property by means of a gate are markedly different from entry of the home by means of the dwelling's front door. In most instances, one reasonably anticipates that the public may enter a gate to one's home without first obtaining permission in order to approach the home itself. However, under no circumstance does one reasonably anticipate that the public may enter one's home without permission.

1 | Patrick by opening the gate to the yard of Unit A4.

2 |     Defendant Stanton also persuasively argues that his conduct did not violate any clearly
3 | established statutory or constitutional right. As set forth above, a right is "clearly established" for the
4 | purpose of qualified immunity if " 'it would be clear to a reasonable [official] that his conduct was
5 | unlawful in the situation he confronted' ... or whether the state of the law [at the time of the alleged
6 | violation] gave 'fair warning' to [him] that [his] conduct was unconstitutional." Clement, 298 F.3d
7 | at 906 (quoting Saucier, 533 U.S. at 202). Here, even in the event a constitutional violation occurred,
8 | Defendant Stanton comes forward with evidence to show that it is not clearly established that his
9 | conduct would have violated the Fourth Amendment.

10 |     The court concludes that no reasonable officer could conclude that opening the gate to the yard
11 | in front of Unit A4 violated the Fourth Amendment knowing: the nature of the area, the time of day,
12 | the report of potential violence at the scene, the reported existence of weapons (baseball bat), the
13 | conduct of Mr. Patrick in failure to comply with Defendant Stanton's lawful order to stop, and officer
14 | and public safety concerns.

15 |     In Santana, the police officers had probable cause to believe that defendant Santana had just
16 | sold a small quantity of heroin and possessed marked money used to purchase the heroin. As the
17 | agents approached Santana's home, they saw her standing in the doorway of the home with a brown
18 | paper bag in her hand. 427 U.S. at 40. The vehicle stopped about 15 feet in front of Santana and the
19 | officers shouted "Police." Santana then retreated into the home, leaving the door open. The police,
20 | without a search or arrest warrant, followed her into the home and arrested her. The district court
21 | granted the motion to suppress on the ground that, although probable caused existed to arrest Santana,
22 | the warrantless entry into the home did not justify a "hot pursuit." The Supreme Court reversed,
23 | holding that once police officers have probable cause to arrest a suspect, the "suspect may not defeat
24 | an arrest which has been set in motion in a public place . . . by escaping into a private place." Id. at
25 | 43. Here, as in Santana, Mr. Patrick committed a crime in a public place, the Penal Code §148
26 | violation. Under Santana, Mr. Patrick could not avoid detention by entering the gate to Unit A4.

27 |     Plaintiff argues that United States v. Dunn, 480 U.S. 294 (1987) and Deorle v. Rutherford, 272
28 | F.3d 1272 (9th Cir. 2001) clearly establish that Defendant Stanton's conduct violated the Fourth

1  Amendment. (RT at p. 15:8-20; RT at p.28:22-25). In Dunn, the Supreme Court held that the barn
2  on a 198-acre property was not within the curtilage of the home and therefore officers did not require
3  a search warrant to look inside the barn. The officers scaled a perimeter fence and at least one barb
4  wire fence when they smelled chemicals coming from a barn on a ranch located 50 yards from the
5  fence surrounding the house. The officers then went to the barn and, with the assistance of a
6  flashlight, looked inside and observed what they believed to be an illegal drug lab. Possessing
7  knowledge that the barn contained a drug lab, the officers obtained a search warrant and subsequently
8  discovered the drug lab and arrested the defendant. The district court denied defendant's motion to
9  suppress and the Fifth Circuit reversed. The Supreme Court reversed the Fifth Circuit, noting that the
10 barn lay outside the curtilage of the ranch house. 480 U.S. at 301. The Supreme Court held that the
11 officers could enter the property, scale two fences, and look inside the barn without violating the
12 Fourth Amendment. The Supreme Court highlighted that the central component to the Fourth
13 Amendment's expectation of privacy inquiry is "whether the area harbors the 'intimate activity
14 associated with the 'sanctity of one's home and the privacies of life.'" id. at 300. The court concludes
15 here that the area behind the gate, unlike a door to a home, is not closely associated with the "sanctity
16 of one's home and the privacies of life." Id. Accordingly, Dunn does not support Plaintiff's argument
17 that Officer Stanton could not open the gate to Unit A4.

18  The court concludes that Deorle is also not helpful to Plaintiff. Deorle is an excessive force
19 case, not an illegal search case. The officer in Deorle intentionally shot the plaintiff with a lead-filled
20 beanbag round, seriously injuring the plaintiff. In reversing the district court's ruling on qualified
21 immunity, the Ninth Circuit held, over dissent,

> Every police officer should know that it is objectively unreasonable to shoot-even with lead shot wrapped in a cloth case-an unarmed man who: has committed no serious offense, is mentally or emotionally disturbed, has been given no warning of the imminent use of such a significant degree of force, poses no risk of flight, and presents no objectively reasonable threat to the safety of the officer or other individuals. Here, all those factors were present. Deorle had complied with the police officers' instructions, had discarded his potential weapons whenever asked to do so, and had not assaulted anyone; in addition, a team of negotiators essential to resolving such situations was en route.

27 272 F.3d at 1285. The present case does not involve the intentional infliction of force on any person.
28  In sum, Defendant Stanton is entitled to summary judgment on his claim of qualified immunity

1  because it is not clearly established that Defendant Stanton's conduct violated the Fourth Amendment.

        Plaintiff's Evidentiary Submissions

The court also concludes that Plaintiff's confusing evidentiary submissions fail to create genuine issues of material fact because they provide insufficient evidentiary support on whether (1) Defendant Stanton intentionally violated the Fourth Amendment; (2) the force applied to the gate was reasonable; or (3) the opening of the gate to the yard of Unit A4 constituted an unconstitutional search. As such, Plaintiff has fallen short of bringing forth evidence sufficient to create a genuine issue of material fact. See Fed.R.Civ.P. 56. Specifically, Plaintiff Sims testified that she was unaware of the presence of any police officers. (Sims Depo. at p. 123:6-10). Ms. Sims did not hear Defendant Stanton's commands nor see police officers in the area. The thrust of Ms. Sims' testimony is that she was aware that there was a disturbance in front of the apartment complex with a dangerous weapon (a baseball bat) and that the individual who called emergency services to report the disturbance was justified in doing so. (Sims Depo. at pp. 99-125). According to Ms. Sims, she was standing in the street talking with Mr. Patrick for about five seconds when they walked towards the gate to Unit A4, opened it, entered the front yard, and closed the gate. (Sims Depo. at p. 122:14- 123:2). Then, Ms. Sims remained standing behind the gate for approximately two to three minutes with Mr. Patrick when, all of a sudden, the gate opened and struck her. (Sims Depo. at p. 123:15-124:13). At no time prior to being struck was Ms. Sims aware of any police presence. Under this version of Plaintiff's factual submission, accepted as true, she fails to raise a genuine issue of material fact with respect to the intent required to state a Fourth Amendment claim, that the force applied was excessive, or that Defendant Stanton's opening of the gate violated the Fourth Amendment.

However, the most troubling aspect of the evidentiary record is Plaintiff's contradictory testimony. Plaintiff testified that she was conversing with Mr. Patrick in the street for about five seconds, no other individuals were present on the street at that time, she and Mr. Patrick together went to the gate to Unit A4, they entered the property and closed the gate. At her deposition, Ms. Sims testified that the time between entering the gate and the time she was struck was about two to three minutes. (Sims Depo. 124:15-125:13). According to the statements of Ms. Sims made on the date of the incident, however, she was struck by the gate "immediately after shutting the gate." (Plaintiff's

1   Exh. 1, p.6).[3] Plaintiff's statements on timing cannot be reconciled. If Plaintiff had indeed been inside
2   the gate with Mr. Patrick for two to three minutes before being struck, then Officer Massey and
3   Defendant Stanton could not have seen the group of three men standing at the location of the reported
4   disturbance, the Officers could not have seen Mr. Patrick cross the street or enter the gate, Defendant
5   Stanton could not have ordered Mr. Patrick to stop, Officer Massey could not have observed a woman
6   standing by the gate to Unit A4, and the Officers could not have seen Mr. Patrick enter the gate
7   because only several seconds had elapsed from the time Defendant Stanton exited the patrol car and
8   closely followed Mr. Patrick in hot pursuit as he entered the gate.

9   Although not indispensable to the court's conclusions, the court finds Plaintiff's testimony
10  that she stood behind the gate for two to three minutes to be of insufficient value to create a genuine
11  issue of material fact. In the Ninth Circuit, this court cannot disregard a party's evidence unless (1)
12  the court finds the evidence is a sham and (2) the contradiction is clear and unambiguous. Van Asdale
13  v. International Game Technology, 577 F.3d 989, 998 (9th Cir. 2009). While credibility determinations
14  are generally inappropriately resolved on a motion for summary judgment, the court notes that this
15  case is an exception to the general rule because Plaintiff herself is the source of the confusion. See
16  Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991) ( a party cannot create an issue of
17  fact by submitting contradictory evidence on both sides of the issue). Plaintiff has testified that she
18  stood behind the gate for "two to three minutes," (Sims Depo. at p.19) and alternatively, that she was
19  struck immediately after closing the gate. (Plaintiff's Exh.1, p.6). Both of Plaintiff's statements
20  cannot be true. The court further notes that Plaintiff's declaration, executed after Defendant filed the
21  motion for summary judgment, does not clarify her time discrepancy. Plaintiff not only failed to
22  utilize the opportunity to clarify her contradictions in an evidentiary submission, but she failed to
23  submit any evidence from a percipient witness, such as Mr. Patrick, that might have shed some light

---

[3] The court notes that the FAC's allegations are generally consistent with the Officers' testimony: There was a commotion outside Ms. Sims' apartment, she stood outside the gate, a La Mesa police vehicle drove onto the scene, Defendant Stanton observed her standing outside the gate to Unit A4, she and Mr. Patrick entered and closed the gate, and "[w]ithin moments of the Plaintiff entering the front-yard gate," the gate was kicked open. (FAC ¶¶ 6-17). Notably, the FAC alleges that Defendant Stanton "was unable to see whether any one of the individuals who he observed walking through the gate remained behind the gate and would be struck." (FAC ¶18). In other words, Plaintiff alleges that Defendant could not see whether anyone stood behind the gate when it was kicked open.

on her confusing and contradictory position. While Plaintiff's contradictory evidence may well be the result of an honest discrepancy or mistake, the court notes that she was not precluded from elaborating or clarifying the inconsistent testimony. As noted by the Supreme Court, the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." Celotex, 477 U.S. at 327. To permit a party to submit contradictory evidence on both sides of an issue in order to create a genuine issue of fact, without explanation, significantly undermines the value of the summary judgment procedure.[4]

Finally, the court addresses Plaintiff's expert witness.[5] The court rejects Dr. Steed's opinions that the Officers lacked reasonable suspicion to briefly detain Mr. Patrick or probable cause to pursue

---

[4] The court also rejects Plaintiff's assertions of six material disputed facts. (Oppo. at pp.3:24-5:6). First, Plaintiff argues that there is a factual dispute because Defendant testified that the three men were on the west side of Thorne and Officer Massey testified that the three men were to the north of them. (Oppo at p.3:24-4:2). The undisputed record establishes that the group was both to the north and west of the patrol car as it proceeded on Thorne Drive. This is not a material factual dispute. Second, Plaintiff argues that the Defendant Stanton stated that the patrol car stopped about 7-8 yards from Mr. Patrick whereas Officer Massey states in the Contact Report that Mr. Patrick crossed about 25 yards in front of the patrol car. The 25 yard estimate is not the stopped distance, but the distance when the "patrol unit came into full view where it could be identified." (Plaintiff's Exh. 1 at pp. 4, 8). This is not a material factual dispute. Third, Plaintiff argues that Defendant stated in the Contact Report that Mr. Patrick walked at a "quick pace" but in his affidavit he states that Mr. Patrick quickly "walked/run." (Oppo at p.3:8-11). This is not a material factual dispute. Fourth, Plaintiff argues that there is a factual dispute whether Defendant Stanton shouted for Mr. Patrick to stop because Plaintiff testifies that she did not see or hear any police officers. On the present record, this is not a material factual dispute because the fact that Ms. Sims did not hear or see the Officers does not mean the officers were not present (she did not see them) or shouted warnings to Mr. Patrick (she did not hear them). Even if relevant to the Fourth Amendment analysis, this does not give rise to a material question of fact. Fifth, Plaintiff argues that there is a factual dispute as to whether Mr. Patrick heard the alleged commands to stop. There is no declaration or deposition testimony to show what Mr. Patrick heard or did not hear. While there is an inadmissible hearsay statement in the Contact Report that Mr. Patrick told Defendant Stanton that he "did not tell him to stop," (Plaitnif's Exh. 1 at p.4), such a hearsay statement is insufficient to create a material factual dispute. Sixth, Plaintiff aruges that there is a factual dispute whether Defendant Stanton knew that Plaintiff was standing behind the gate. While Defendant Stanton testifies that he did not see or believe that anyone was behind the gate, Officer Massey testified that he observed a black woman standing next to the gate as Mr. Patrick approached the gate. There is no evidence showing that Defendant Stanton saw the woman standing by the gate. Notably, Ms. Sims testified that she did not see any police officers and the FAC alleges that Defendant Stanton did not see anyone behind the gate. (FAC ¶18). This is not a material factual dispute.

[5] The court also rejects Dr. Steed's opinions regarding the six factual disputes identified in Plaintiff's brief for the reasons set forth in the previous footnote. As set forth above, despite Mr. Steed's opinions, the court concludes that the Officers had articulable suspicion to briefly detain Mr. Patrick for questioning and possessed probable cause to believe that Mr. Patrick violated Penal Code §148.

him into the front yard of Unit A4. (Steed Decl. ¶¶ 15, 17-23). Dr. Steed possesses both a Master's degree and Ph.D. in the field of Human Behavior. Dr. Steed also appears qualified to provide certain testimony concerning law enforcement procedures. However, for the reasons set forth herein, the court rejects Dr. Steed's opinions that the officers lacked articulable reasonable suspicion to briefly detain Mr. Patrick and probable cause to believe a crime was committed when Mr. Patrick failed to comply with Defendant Stanton's lawful order to stop. Whether Defendant engaged in a lawful Terry stop or whether the Defendant possessed probable cause to arrest Mr. Patrick is, under the circumstances, a legal conclusion for the court.

In sum, the court concludes that Defendant Stanton is entitled to summary judgment on all federal claims because no Fourth Amendment violation occurred.

**Supplemental Jurisdiction**

Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III," except as provided in subsections (b) and (c). "[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." Acri v. Varian Assoc., Inc., 114 F.3d 999, 1000 (9th Cir. 1997). "The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Supreme Court has cautioned that "if the federal claims are dismissed before trial, ... the state claims should be dismissed as well." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966).

Because the court has dismissed all of plaintiff's federal claims, the court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) as to the state law claims. "In the usual case in which federal law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); Schneider v. TRW, Inc., 938 F.2d 986, 993 (9th Cir. 1991). Here, there does not appear to be any extraordinary or unusual circumstances which would warrant retention of the state law claims. Accordingly, the court dismisses the state law claims without

prejudice.

In sum, the court grants summary judgment in favor of Defendant Stanton and against Plaintiff Sims on all federal claims. The court also dismisses the state law claims for lack of supplemental jurisdiction. The Clerk of Court is instructed to close the file.

**IT IS SO ORDERED.**

DATED: February 8, 2011

_____
Hon. Jeffrey T. Miller
United States District Judge

cc: All parties